JAMES DONAHUE *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)    No. 80-2260

Opinion filed June 17, 1982.

Robert S. Sugarman and Stephen B. Horwitz, both of Jacobs, Burns, Sugarman & Orlove, of Chicago, for appellants.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and Philip L. Bronstein, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE ROMITI delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County dismissing plaintiffs' complaint for injunctive relief. We find that the case is moot and dismiss the appeal on that ground.

According to the complaint plaintiffs are residents of the city of Chicago who achieved a passing score on an employment examination for firefighters administered by the department of personnel of the city of Chicago. Plaintiffs, and others who passed the examination, were then ranked according to their scores and were listed on Firefighters Eligibility List No. 8106 (list 8106). Prior to February 14, 1980, approximately 250 candidates had been certified and appointed to the position of firefighter

from this list in accordance with personnel board rules. Upon their appointment these persons began to serve a one-year probationary period leading to a career service appointment.

On February 14, 1980, the Chicago Firefighters Union began a strike. The resulting manpower shortage caused the city to invoke emergency employment powers under section 25.1—5(8) of the Municipal Code of Chicago. (Chapter 25.1 of the Municipal Code was repealed and replaced by a new chapter 25.1 on July 20, 1981. Journal of Proceedings of the City Council of the City of Chicago, July 20, 1981, at 6680-6704.) That section provided:

> "Whenever a serious emergency exists in which substantial impairment, harm or loss to the citizens, the property of the City, or a program of the City will result, and which makes it impossible to fill a position in the Career Service by the normal procedure, a department head with the consent of the Director may appoint any qualified person to such position under an emergency appointment. Such person shall be employed only during such emergency and for a period not to exceed ninety (90) calendar days." (Municipal Code of Chicago 1980, ch. 25.1, par. 25.1—5(8).)

The city hired approximately 800 individuals to fill vacancies created by the strike. Although, according to plaintiffs' complaint, many of these individuals were not taken from the eligibility list, and those who were taken from that list were not selected in sequential order, plaintiffs concede that the city acted properly within its emergency powers in making these temporary appointments. However they contend that these individuals were improperly retained after the strike ended. (Personnel rules then in effect extended the duration of such emergency appointments for 90 days after the emergency has ended, but the emergency employees were retained even after that period had ended.)

On June 26, 1980, plaintiffs filed their complaint, contending that the retention of these employees was unlawful and deprived plaintiffs of their right to secure career service appointments to those positions. Plaintiffs also contended that cancellation of list 8106 (which had a one-year posting period ending June 27, 1980) before the emergency appointments were vacated and those positions filled from that list would cause irreparable injury to plaintiffs by eliminating their opportunity to secure those appointments. Plaintiffs requested the entry of a temporary restraining order and then preliminary and permanent injunctions (1) barring defendants from cancelling or withdrawing list 8106, (2) barring defendants from continuing the emergency appointments and requiring them to vacate and rescind those appointments, and (3) ordering defendants to utilize list 8106 in sequence according to numerical ranking to fill the resulting vacancies.

At a June 27, 1980, hearing on plaintiffs' motion for a temporary restraining order counsel for defendants informed the court that list 8106 would be extended for one year. Nonetheless the court then issued an order requiring that the list remain in effect until further order of court. Defendants have informed this court that the list continues to be posted.

Subsequently defendants and certain intervenors (representing the class of about 800 individuals receiving the emergency appointments) moved to dismiss plaintiffs' complaint. The court granted these motions, finding that the city had acted properly within the authority of section 3—11 of the Municipal Code of Chicago, which provides:

"The mayor shall be ex-officio coordinator of activities in cases of emergency resulting from any explosion, fire, flood, riot, storm or other cause requiring concerted measures for the maintenance of public peace and order, the preservation of life and property and the relief of suffering, or for any of these purposes. He shall formulate, and, as occasion therefor arises, he shall execute plans for the prevention of such emergencies so far as possible and for meeting them effectively when they arise. Obedience to his orders in executing such plans and meeting such emergencies is obligatory upon all departments and heads of departments and upon all other officers and employees of the city of Chicago. The fire commissioner shall be deputy co-ordinator of such activities under supervision of the mayor as co-ordinator. In the absence or inability to act of the fire commissioner his powers and responsibilities shall be vested in an acting deputy co-ordinator appointed by the fire commissioner." (Municipal Code of Chicago 1981, ch. 3, par. 3—11.)

The court also found that plaintiffs had no vested property interest in the eligibility list, no threat of imminent harm to plaintiffs existed because the eligibility list was still active and would be for some time, that plaintiffs' likelihood of success on the merits was "negative," and the threat and harm to defendants far outweighed that to plaintiffs so that equity favored defendants. Accordingly defendants' and intervenors' motions to dismiss were granted.

■■■ We do not reach the merits of these findings, for we agree with defendants that subsequent events have rendered the cause moot. On May 13, 1981, the Chicago City Council enacted an ordinance providing:

"SECTION 1. Any person who as of the date of the passage of this ordinance, holds an emergency appointment within the Fire Department of the City of Chicago is hereby given a Probationary Career Service Appointment to the position of Firefighter, Grade F1, effective on and after the date of the passage of this ordinance. SECTION 2. Any person given Probationary Career Service

Appointment to the position of Firefighter, Grade F1 pursuant to this ordinance shall serve a probationary period of one year as provided in the City of Chicago Personnel Rules and upon satisfactory completion of the probationary period shall be given Career Appointment to the position of Firefighter, Grade F1 and shall acquire Career Service status in the position.

SECTION 3. The Commissioner of Personnel and the Fire Commissioner are authorized and directed to apply and carry out this ordinance and to perform any other lawful acts which may be necessary or desirable to carry out the purposes and provisions of this ordinance.

SECTION 4. This ordinance shall govern and prevail over all ordinances, statutes, and rules and regulations contrary to or inconsistent with the terms of this ordinance.

SECTION 5. This ordinance shall take effect and be in force from and after its passage." (Journal of Proceedings of the City Council of the City of Chicago, May 13, 1981, at 6144.)

Appellants do not challenge the validity of this ordinance or its applicability to the emergency employees involved in this cause. We have noted that the relief sought by plaintiffs was extension of the posting period of the eligibility list, vacation or rescission of the hiring of the emergency employees, and filling of those vacancies by order from that list. The list has been extended indefinitely and nothing in the record suggests that the city will fail to utilize it for further hiring. But the ordinance we have cited above precludes the other two forms of relief and renders moot any controversy as to the city's original action in continuing to employ these individuals. As was stated in *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 379, 121 N.E.2d 486, 488:

"Since the existence of a real controversy is an essential requisite to appellate jurisdiction, the general rule is that where a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved, it will dismiss the appeal or writ of error even though such facts do not appear in the record."

Plaintiffs argue that this case presents an issue of substantial public interest such that it should be considered despite its mootness. Illinois does recognize this exception, but it is to be applied very narrowly, and the public interest must be very clear to prevent dismissal of appeals involving moot questions. (*People ex rel. Cairo Turf Club, Inc. v. Taylor* (1954), 2 Ill. 2d 160, 116 N.E.2d 880; *In re Johnson* (1977), 53 Ill. App. 3d 921, 369 N.E.2d 70.) Among the criteria for establishing this exception are the public nature of the question presented, the desirability of authoritative determination of the issue for future guidance of public officials, and the

likelihood of recurrence of the question. (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 104 N.E.2d 769, *cert. denied* (1952), 344 U.S. 824, 97 L. Ed. 642, 73 S. Ct. 24; *Lerner v. Lerner* (1980), 84 Ill. App. 3d 721, 405 N.E.2d 1328.) It has been held that all three of these criteria must clearly be met before a court will decide a case despite its mootness. *Lerner v. Lerner* (1980), 84 Ill. App. 3d 721, 405 N.E.2d 1328; *In re Johnson* (1977), 53 Ill. App. 3d 921, 369 N.E.2d 70; *Hill v. Murphy* (1973), 14 Ill. App. 3d 668, 303 N.E.2d 208.

In this cause the issue of whether the mayor of Chicago's emergency powers under section 3—11 of the Municipal Code of Chicago extend to the hiring of emergency appointees for periods longer than that otherwise provided for does present an issue of public interest. But because of the extraordinary nature of the events leading up to this dispute we do not find it likely that the question will recur, nor do we find it necessary that an authoritative determination of the question be made for the guidance of public officials in the future. Accordingly we find that the cause should be dismissed as moot.

Cause dismissed as moot.

JOHNSON, P. J., and LINN, J., concur.